IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § § § | |
| v. § § § | CASE NUMBER 2:98-CR-00008-01 |
| DAVID JOHN FYE § § | |

# MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant David John Fye's ("Defendant" or "Fye") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act ("Motion"). (Dkt. No. 81). Having considered the briefing, case record, and relevant authorities, the Court is of the opinion that the Motion should be **DENIED**.

## I. BACKGROUND

In April 1999, Fye entered a guilty plea for the offense of motor vehicle theft, also known as carjacking, in violation of 18 U.S.C. § 2119, resulting in the death of the victim. He was sentenced to life imprisonment. (Dkt. No. 73). Fye did not file a direct appeal. On March 28, 2000, he filed case number 2:00cv55, a proceeding under 28 U.S.C. § 2255 challenging his conviction. This Court dismissed the case, and—in June 2002—the United States Court of Appeal for the Fifth Circuit denied his motion for a certificate of appealability, (Dkt. No. 23 at 2:00-cv-55).

## II. FYE'S MOTION

Fye seeks release because of the COVID-19 pandemic. Specifically, he argues that there are no vaccines that have been developed for the new "Delta Variant" and that his medical conditions render him more vulnerable to COVID-19 infection, (Dkt. No. 81 at 3-4). Fye explains that he suffers from cirrhosis of the liver and congenital heart disease—known as a "ventricular

1

septal defect"—both of which the Centers for Disease Control (CDC) categorize as pre-existing conditions posing a "heightened risk" for COVID-19 infection. (*Id*. at 6). He further notes that his family suffers from a history of cancer and other serious medical conditions. While Fye explains that he has contracted COVID-19 while imprisoned—and has since recovered—he remains at heightened risk and/or is "susceptible to future complications." (*Id*.).

Moreover, Fye states that he has refused to be vaccinated against COVID-19 infection, (*Id*. at 7). He asserts that he was informed by medical staff at the United States Penitentiary Coleman that "neither of the vaccines has been critically tested for their long-term effects on individuals with congenital heart disease and cirrhosis of the liver." (*Id*.). Given the pandemic, the new COVID-19 strain, his pre-existing medical conditions, and his remorse, Fye asserts that serving the remainder of his life sentence would not be in the interests of justice and, instead, would be "unnecessary and unnecessarily inhumane." (*Id*. at 8).

Fye attaches his medical records from 2013 and a letter to the Court to his motion. In his letter, Fye states that he does not want the Court to remember him as the "immature, drug-addicted, and mentally unbalanced child" that he was when last in the courtroom, (*Id*. at 8). He explains that he was young and had little life experience—and did not fully "know much about life in general or what is really important or of real value." Fye further articulates that the incident for which he was convicted "eat[s]" at him daily," particularly for the damage done to the victim's family. He states that now he understands love, family, and the horrible reality of the loss of a loved one—adding that he wishes he could undo the damage. Fye states that his "greatest hope in this life is to simply spend some time with [his] family and to get to know them better." (*Id.*).

### III. GOVERNMENT'S RESPONSE

The Government responded to the Motion. (Dkt. No. 83). The Government urges this Court to deny the motion because Fye (1) has not identified any medical condition he has that is on the

CDC's list of risk factors, (2) has refused the COVID-19 vaccine, (3) remains a danger to the community, and (4) failed to exhaust his required remedies with the Bureau of Prisons (BOP). (*Id.* at 1). The Government further notes that Fye has been infected with COVID-19 while imprisonment and recovered. Finally, it highlights BOP's response to the pandemic.

## IV. LEGAL STANDARDS

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A), the statute authorizing compassionate release.

The First Step Act of 2018 instituted the first major changes to compassionate release since its authorization in 1984. Pub. L. 115-391, 132 Stat. 5194. The Act, in part, amended section 3582(c), which gives the court discretion—in certain circumstances—to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any person or the community, as provided under section 3142(g);
>
> > and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Even if extraordinary and compelling reasons exist, such reasons must outweigh the 18 U.S.C. § 3553(a) factors to warrant a sentence reduction. *See* 18 U.S.C. 3582(c)(1)(A). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .
>
> (5) any pertinent [Sentencing Commission] policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

*(Id*. § 3553(a))*.*

## V. DISCUSSION AND ANALYSIS

As an initial matter, Fye is not eligible for relief under the First Step Act of 2018 because his carjacking conviction is not one of the eligible offenses of conviction. First Step Act of 2018, Pub. L. 115-391, § 404, 132 Stat. 5194 (2018); *see also United States v. Bell*, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019) ("However, because Defendant was convicted of carjacking, and not of an offense involving crack cocaine or cocaine base, he is not entitled to a sentence

reduction."); *United States v. Declouet*, 2020 WL 708137, at *2 (E.D. La. Feb. 12, 2020) (explaining that none of the defendant's convictions, which included carjacking, rendered him eligible for relief under the First Step Act). Accordingly, because Fye's conviction is for carjacking, his motion for relief under the Act is without merit. The Court will now turn to compassionate release.

A. Exhaustion of Administrative Remedies

Fye failed to exhaust administrative remedies, which precludes compassionate release. Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir.) ("Prior to the First Step Act … courts lacked the power to adjudicate motions for compassionate release."), *cert denied*, *Franco v. United States*, 141 S.Ct. 920 (2020). The First Step Act amended section 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019).

The plain language of the statute, however, makes clear that the court may not grant a defendant's motion for compassionate release <u>unless</u> the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A) (emphasis supplied). Therefore, to file a proper motion for compassionate release, the defendant must have exhausted before filing his motion. *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021). The district court has no discretion or authority to waive the exhaustion requirement—it is mandatory rather than jurisdictional. *Franco*, 973 F.3d at 467 ("holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release is not jurisdictional but that it is mandatory").

Before filing a motion for compassionate release in federal court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and

5

then either exhaust his administrative remedies or wait for the lapse of thirty days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A).

Here, Fye explains that—in July 2021—he sought to comply with the exhaustion requirement. That day, he "was informed by his case manager (H-2, Unit Case Manager U. Velasquez) that this type of relief from the warden was not available" to him. (Dkt. No. 81 at 3). The case manager instructed him to file his request "directly with the sentencing court" in light of the COVID-19 pandemic. As part of this instruction, Fye asserts that he was given a written "Notice to Inmate Population" confirming the instruction. (*Id*.). He maintains that even if this "Notice" cannot serve as proof of exhaustion, exhaustion was "unavailable to him." The "Notice" appears as follows:

> Case 2:98-cr-00008-JRG   Document 81-1   Filed 09/23/21   Page 2 of 12 PageID #: 82
>
> ## Clarification on Reduction in Sentence (RIS) Requests
>
> ### (Extraordinary and Compelling Circumstances under FSA )
>
> Inmates are encouraged to review Program Statement 5050.50 to ensure requests are appropriate. Requests for a Reduction in Sentence will be denied at the institutional level should the request fail to demonstrate extraordinary or compelling circumstances which would warrant a reduction in sentence under **BOP guidelines**.
>
> To the extent an inmate believes their sentence should be reduced pursuant to the sentence reform provisions of the First Step Act of 2018, they may raise those concerns directly with their sentencing court.
>
> The Federal Bureau of Prisons has **no authority** to reduce a sentence pursuant to those provisions or based on sentence length.

(Dkt. No. 81 at 3; Dkt. No. 82).

Fye's own words show that he failed to complete the mandatory exhaustion process. While he explains that he spoke with a prison official at his Unit, he did not speak to the Warden and did not ask the Warden to file a motion for compassionate release on his behalf. Instead, he merely

6

"sought to comply" by speaking with a Unit Case Manager. Because Fye never submitted a request to the Warden, he failed to exhaust his required remedies and this Court cannot grant his motion. *See United States v. Soliz*, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period) (internal citations omitted).

Moreover, even if Fye had complied with the exhaustion requirement before filing the instant motion, he failed to present extraordinary and compelling reasons warranting a sentence reduction at this time.

### B. Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must satisfy three criteria for release. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, as explained above, he must meet one of the two conditions listed in section 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(C)(1)(A)(i) or the defendant is at least 70 years of age, has served at least thirty years in prison, and meets the additional requirements under § 3582(c)(1)(A)(ii). *Id*. Second, the defendant must show that compassionate release would be consistent with applicable policy statements. Finally, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors." *Id*.

Section 3582(c)(1)(A)(i) does not define what constitutes "extraordinary and compelling reasons" that merit compassionate release. Congress, instead, delegated its authority to the Sentencing Commission. *See* 28 U.S.C.§ 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). Before the First Step Act, the Commission

7

issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling. While not binding, the Commission's policy statement contained in § 1B.1.13 and the commentary provide guidance concerning what may constitute "extraordinary and compelling" reasons warranting compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B.1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S.Ct. 2688 (2021).

In Application Note 1 of § 1B1.13, the Commission defined "extraordinary and compelling reasons" to include four categories of circumstances, any of which could suffice to warrant compassionate release: (1) certain medical conditions of the defendant; (2) the defendant is sixty-five years or older and meets other requirements; (3) the defendant's family has specified needs for a caregiver; and (4) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B.1.13 cmt. n.1.

*1. COVID-19 Pandemic*

Fye asserts that the COVID-19 virus, specifically the Delta variant of the virus, is spreading throughout his prison unit—with at least ninety-one prisoners in quarantine. He states that while he has already contracted and recovered from the virus while imprisoned in October 2020, "currently there are no vaccines available to him that have been developed specifically for this new mutation," (Dkt. No.81 at 4).

Moreover, he insists that his medical conditions constitute "extraordinary and compelling" reasons warranting compassionate release. Because the new variant has been described as "more contagious and deadly than the original strain," Fye maintains that his pre-existing medical conditions—cirrhosis of the liver and congenital heart disease—render him susceptible to

8

contagion and serious illness or death. (*Id*.). He adds that his family suffers from a history of cancer and heart attacks. Fye highlights that he refused to be vaccinated against COVID-19 because he was "reliably informed" that the vaccines have not been tested for their long-term effects on persons with his pre-existing conditions. (*Id*. at 7.).

Fye expresses legitimate concerns regarding COVID-19 and his health. However, they do not rise to the level of "extraordinary and compelling" reasons warranting release from imprisonment. As an initial matter, Fye failed to establish that the BOP cannot manage a COVID-19 outbreak within his prison unit or that his unit is specifically unable to treat him if he were to contract the virus again. This conclusion is bolstered by Fye's previously contracting COVID-19—even if a different strain—and then recovering all while imprisoned with the BOP.

In response, the Government highlights the BOP's "Action Plan," which was refined in early 2020 in consultation with the CDC. The plan is described in detail on the BOP's website. The Government explains that as part of the plan, all newly arriving prisoners are quarantined—and not released into general population until fourteen days have passed and the prisoner has tested negative. Moreover, prisoner movement within the prison is restricted to promote social distancing. (Dkt. No. 83, pg. 3-5).

The COVID-19 pandemic does not, by itself, provide a basis for a sentence reduction. After all, the COVID-19 virus poses a threat to the entire population—and it does not pick and choose whom to infect. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *United States v. Raia*, 954 F.3d 594, 597 (3d. Cir. 2020) ("But the mere existence of COVID-19 in society and the *possibility* that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.") (emphasis added).

Here, Fye articulates a general fear of contracting the new COVID-19 variant/mutation. While he admits that he already contracted the original virus—and recovered—he notes that there are no vaccines for the new variant "in the event he should become infected by it," (Dkt. No. 81 at4). Fye's general fear of contracting the new COVID-19 variant does not persuade the Court to grant him compassionate release. *See United States v. Rivas*, 2022 WL 996418, at *1 (5th Cir. Apr. 2022) (unpublished) ("Additionally, Rivas has served less than half of his federal sentence and expressed only a generalized fear of contracting COVID-19 before the district court.").

Turning to Fye's concerns regarding his pre-existing medical conditions, the Court determines that he failed to present extraordinary and compelling reasons warranting compassionate release. Fye explains that he suffers from cirrhosis of the liver and congenital heart disease defined as a "ventricular septal defect," (Dkt. No. 81 at 6). He also notes that his family history includes diagnoses of brain cancer, lung cancer, and heart attacks. (*Id.*). Fye attaches a 2013 medical record from Preston Memorial Hospital that includes a notation signed by a doctor that a "pathology report reveals chronic hepatitis due to hepatitis C virus." Fye's medical records are devoid of any diagnosis for cirrhosis of the liver or heart disease, (Dkt. No. 81-1 at 4-6). Similarly, the Government's attachments in support of its response include Fye's medical records from the BOP—dated throughout 2020 and 2021—and do not include any diagnosis for cirrhosis of the liver or heart disease, (Dkt. No. 83). Given a lack of diagnosis for either cirrhosis of the liver or heart disease, Fye's motion for compassionate release based on these ailments is without merit.

Even assuming that Fye has been diagnosed with cirrhosis of the liver and heart disease, release is not warranted. Courts have repeatedly denied motions for compassionate release filed by prisoners who, like Fye, have already contracted and recovered from the virus. *See, e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v.*

10

*Diaz*, 2020 WL 5505946, at *3-4 (S.D. Tex. Sept. 11, 2020) (finding no extraordinary or compelling reason on record wherein prisoner tested positive for COVID and "successfully recovered."); *United States v. Marley*, 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("A defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release."); *United States v. Baker*, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."). Consequently, successful recovery of a prisoner like Fye from a COVID-19 infection—even when that prisoner suffers from pre-existing medical conditions—weighs heavily against granting compassionate release.

Likewise, Fye's choice to forgo vaccination against COVID-19 infection weighs against granting compassionate release. Federal courts have also consistently held that a prisoner's denial of COVID-19 vaccination precludes compassionate release. *See United States v. Baeza-Vargas*, 532 F. Supp.3d 840, 843-44 (D. Ariz. 2021) (explaining that a prisoner's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances); *see also United States v. Clay*, 2022 WL 1321010, at *3 (S.D. Tex. May 2, 2022) ("Courts now widely recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release.") (quoting *United States v. Downer*, 2021 WL 2401236, at *2 (D. Md. June 11, 2021)); *United States v. Newell*, 2021 WL 3269650, at *11 (M.D.N.C. July 30, 2021) (unpublished) ("If he were to receive a sentence reduction to time served, his refusal to be vaccinated would increase the risk of transmission of the virus in the community.").

Fye's refusal precludes granting compassionate release. *See United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling'

reason for immediate release."). Fye stresses that there is no vaccine for the new variant and that he was "reliably informed" that neither of the current vaccines have been clinically tested for long-term effects with respect to his medical conditions. He presents no evidence supporting this contention.

While Court appreciates Fye's concern, apprehensions surrounding the long-term effects of any new vaccine are not limited to prisoners. Fye's concern regarding the long-term effects of the vaccine does not present extraordinary and compelling reasons warranting compassionate release. *See United States v. Cain*, 2021 WL 2269974, at *6 (D. Me. June 3, 2021) (rejecting prisoner's excuses for refusing vaccination and noting that he "ignores the risk of not being vaccinated and the benefit of vaccination. CDC guidance affirms that the COVID-19 vaccines are 'safe and effective'"); *see also Clay*, 2022 WL 1321010, at *3 ("Defendant, however, has failed to provide any evidence that it is medically inadvisable for her to receive a COVID-19 vaccination.") (internal quotation marks omitted).  The Court determines that Fye's medical conditions, while unfortunate, coupled with his choice to forgo vaccination against COVID-19 infection, do not constitute extraordinary and compelling reasons warranting compassionate release.

        2. Rehabilitation

Fye attaches a September 2021 letter to the Court to his motion. In his letter, Fye explains that he wishes to speak directly to the Court because of the Court's previous "measure of [him] to be that of the immature, drug addicted, mentally unbalanced child that [he] was" when last in the courtroom, (Dkt. No. 81-1 at 8). Fye highlights that at the time of his crime, he "didn't know much about life in general" or "what is really important." (*Id*.).  He notes that his actions "eat at" him daily and he simply hopes to be able to get to know his family. Fye also attaches four letters from

12

family members who explain that Fye has changed since his imprisonment and is extremely remorseful, (*Id*. at 9-12).

To the extent that Fye maintains that these changes while imprisoned—a change in emotional status and overall demeanor, learning not to be selfish, and taking others into consideration—constitute rehabilitation warranting compassionate release, his arguments do not present extraordinary and compelling reasons or circumstances. While it is true that the Court may consider rehabilitation efforts, rehabilitation of the defendant alone cannot be considered an extraordinary and compelling reason. *See Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, rehabilitation alone shall not be considered).

Here, although Fye articulates how he has changed since he committed his crime by now understanding the value of life and family and his family members express his newfound appreciation for human beings and relationships, he has not presented sufficiently extraordinary and compelling accomplishments to merit compassionate release. The Court appreciates Fye's sentiments—and hopes he will continue on the path to rehabilitation—but it declines to exercise its discretionary authority under section 3582 at this time based on Fye's rehabilitation efforts and newfound appreciation of life. *See, e.g.*, *United States v. Boyd*, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing the prisoner's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors).

### 3. Section 3553(a) Factors

The Court further finds that compassionate release is not warranted in this case in light of the applicable factors articulated in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v.*

*Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (unpublished) (finding that the district court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors).

Fye insists that his serious offense does not disqualify him from compassionate release. He states that his offense occurred over twenty-five years ago and that Courts "have not excluded any class of offender from the compassionate release program, not even those convicted of the most serious offenses in the criminal code." (Dkt. No. 81 at 5). Fye elaborates as follows:

> Because a man's life was lost, there is no doubt that David John Fye's underlying offense was serious. There is also no doubt that he has acknowledged this fact, and attempted to make amends in the only way he knows how, by complying with the rules of the Bureau of Prisons, taking various educational and behavioral programs offered and made available to him, as well as conducting himself in a manner consistent with someone who is preparing for release…even though for so many years that possibility has never existed.

(*Id*.). He also requests that this Court consider his remorse for committing his offense.

Fye stipulated to the facts of his offense during his plea hearing, and they are outlined in his section 2255 proceeding. Fye and two other co-defendants planned to rob a bank in Shreveport, Louisiana. Fye entered the bank and took money from a patron who was making a deposit. He then ran to his van, which prompted a pursuit by police and a high-speed chase. Fye sped down the interstate highway and into the State of Texas—eventually becoming stuck off the road. He jumped out of his van with a revolver and forced his way into a truck. The chase continued, with Fye ultimately wrecking the truck. He then made his way into another vehicle—a 1993 GMC Yukon. Fye forced the driver to move over, and officers then began shooting their weapons at the Yukon. The driver jumped out of the Yukon through the front window, ultimately resulting in his death, (Dkt. No. 11, at 1-2, Case No. 2:00cv55).

While Fye is correct that the offense for which he was convicted does not disqualify him from compassionate release, his offense and its facts are significant when balancing the factors outlined in section 3553(a). Where, as here, a prisoner has engaged in severe criminal conduct and has a significant criminal history, the district court has discretion to deny compassionate release

under those circumstances. *See United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (finding that the district court did not abuse its discretion in applying the § 3553(a) factors in considering prisoner's "severe conduct, his serious drug crime, and his criminal history, which included aggravated robbery."); *United States v. Anderson*, 2022 WL 2072864, at *3 (5th Cir. June 9, 2022) (unpublished) ("Moreover, our review of Anderson's criminal record supports the district court's statement that it 'cannot find that [Anderson] is not a danger to the community.'").

Here, Fye committed a serious and severe offense—one that resulted in the death of the victim. His conduct not only resulted in the death of an innocent person who was merely driving his car, but his dangerous conduct placed the entire community at risk by engaging in a high-speed chase across state lines. Furthermore, his criminal case reveals that other jurisdictions—Ohio, Georgia, Illinois, and other counties within Texas—agreed to drop or were expected to drop additional robbery charges against Fye if he received a life sentence, (Dkt. No. 71) (sealed Presentence Investigation Report); (Dkt. No. 11 at 2, Case No. 2:00cv55). The existence of other dropped charges, while not dispositive, coupled with the seriousness of his offense reveals Fye's disdain for the rule of law when considering the section 3553(a) factors. *See United States v. Doe*, 833 F. App'x 366, 367 (3d Cir. 2020) (unpublished) (affirming denial of compassionate release, as "the District Court did not abuse its discretion in assessing the seriousness of Doe's offense for conviction or his criminal history.").

In view of the nature and circumstances of Fye's offense of conviction—carjacking resulting in a victim's death—the court cannot conclude that releasing Fye from prison at this time would afford adequate deterrence or would protect the public—as he poses a danger to the community as a whole. *See United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. Apr. 30, 2021) ("Though Keys claims that the district court gave too much weight to his criminal history, his argument amounts to a mere disagreement with the court's balancing of the § 3553(a) factors.").

Furthermore, even if he did not pose a risk to the community, granting Fye early release on his life sentence would fail to provide just punishment for his serious offense, promote respect for the law, and account for his poor prison disciplinary record. Courts have observed that in granting compassionate release, courts have "largely done so for defendants who had already served the lion's share of their sentences and presented multiple, severe health concerns." *Thompson*, 984 F.3d at 434-35; *see also Chambliss*, 948 F.3d at 694 (denying release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense.").

Here, Fye was sentenced to life imprisonment for his offense. To date, he has served approximately twenty-four years of his life sentence and is approximately fifty years of age. As in *Chambliss*, Fye has not served a "lion's share" of his sentence. Releasing Fye after serving twenty-four years of his life sentence, at fifty years old, would minimize the impact of crime and seriousness of his offense—and would fail to provide just punishment and adequate deterrence to criminal conduct. The Court recognizes Fye's remorse articulated in his pleading and letter to the Court; however, his remorse and desire to spend time with his family are not enough and fall well short of promoting respect for the rule of law.

Fye's prison disciplinary history further weighs against compassionate release. The Government attaches Fye's disciplinary history to its response, (Dkt. No. 83-3) (sealed). A review of this history reveals an extensive history of phone abuse, possessing/using drugs or alcohol, refusing to comply with orders, fighting with others, and being in unauthorized areas—with the most recent infraction occurring in 2021. (*Id*. at 1-11). This disciplinary history is at odds with Fye's claim that he has "complied with the rules of the Bureau of Prisons." (Dkt. No. 81 at 5).

This extensive prison disciplinary history—coupled with Fye's serious offense—bolsters a finding that compassionate release is not warranted, as it shows Fye's continued disrespect for

16

the rule of law. *See United States v. Griffin*, 835 F. App'x 783, 784 (5th Cir. 2021) (unpublished) (affirming district court denial of compassionate release based, in part, on Griffin's "prison disciplinary record, which includes a conviction for assaulting an officer."); *United States v. Cash*, 2022 WL 2760227, at *9 (E.D. Tex. July 13, 2022) ("There is no reason to believe that Cash would not revert to engaging in violent criminal activities—namely, carjackings, armed robberies, and home invasions—as well as the illegal use of firearms, if released from prison at this time.").

## VI. CONCLUSION

Fye failed to exhaust his administrative remedies in the BOP before filing this motion. Even if the Court could overlook that failure, Fye failed to satisfy his burden of demonstrating the necessary circumstances to warrant compassionate release. Specifically, he has not demonstrated that extraordinary and compelling reasons exist warranting compassionate release at this time—as he previously contracted and recovered from COVID-19, refuses vaccination, and has not shown that his pre-existing medical conditions warrant immediate release.

Furthermore, in applying the section 3553(a) factors, the Court has determined that Fye has not served the lion's share of his life sentence and remains a danger to the community as a whole. Finally, releasing Fye from imprisonment would be an affront to promoting respect for the rule of law and providing just punishment for his serious offense. Consistent with the foregoing analysis, Fye's Motion, (Dkt. No. 81), is **DENIED**.

**So ORDERED and SIGNED this 31st day of August, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE